**YEOMANS DISTRIBUTING COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 83–1235.**

United States District Court,
C.D. Illinois,
Peoria Division.

Jan. 9, 1985.

David L. Higgs, Sutkowski & Washkuhn, Peoria, Ill., for plaintiff.

Ellen Carpenter, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., Janet L. Jannusch, Asst. U.S. Atty., Peoria, Ill., for defendant.

## ORDER

MIHM, District Judge.

The Plaintiff, Yeomans Distributing Company, has brought this action seeking to recover an alleged overpayment of tax and interest assessed by the Internal Revenue Service following disallowance of deductions claimed for deferred compensation payments made to A.M. Yeomans. The assessment complained of was made for the corporation's fiscal years ending April 30, 1978 and April 30, 1979, and the amount sought to be recovered is $27,804.98 plus statutory interest.

## FINDINGS OF FACT

In 1947, A.M. Yeomans founded and solely operated Yeomans Distributing Company as an exclusive distributor of Motorola audio products and parts. He was 47 years old at that time and he abandoned the relative security of the Motorola factory, where he had been employed for 16 years. He put everything that he had, his material assets as well as his time and energy, into the growth and development of the business. In 1953 he incorporated and served as the corporation's president, chief executive officer, and chairman of the board of directors from 1953 until his retirement at age 70 in 1971. Over the years he added new lines of products for distribution and he superintended the corporation's expansion from total assets of $619,000 to somewhat more than $2,000,000. He expended tremendous time and effort, doing business in classic fashion. In that 18 year time period, the corporation declared no dividends and Mr. Yeomans reduced his salary on two occasions, with the intention of maintaining the corporation's capital at a level which he considered to be reasonable for a business of that kind.

A.M. Yeomans owned approximately 90% of the corporate stock in June of 1966, and his wife and two children, Murray and Fay, owned the remaining shares. At no time during its existence has anyone outside of his immediate family owned stock in the corporation. In 1969, Mr. Yeomans began transferring his shares to his son, Murray. Approximately 21.3% of the stock was transferred between 1969 and 1970 and 38.3% was transferred during 1971. By 1978, Murray Yeomans owned 74.2% of the corporation's stock. Testimony during the trial indicated that A.M. Yeomans currently owns approximately 10% of the corporate stock.

On June 17, 1966, Mr. Yeomans entered into an agreement with the corporation in which he promised to remain as president and board chairman at least until he reached age 68 and to retire no later than age 71. He further agreed to perform consultation services after his retirement for which he was to be compensated separately. There was also a non-competition clause as part of this agreement. In exchange for these promises, the corporation agreed to continue paying him a salary in an amount not less than what he was currently earning until his retirement, $20,000 per year for life after his retirement, and that same amount to his surviving widow.

Pursuant to this agreement, A.M. Yeomans retired in 1971 and was succeeded as president of the corporation by his son, Murray. He has performed the agreed upon consulting services and been compen-

sated for them. He has also received the $20,000 annual payment from the corporation, which claimed that payment as a business deduction under § 162 of the Internal Revenue Code of 1954.

The Court is called upon in 1984 to determine the real purpose of that agreement reached in 1966. Although the agreement itself is silent as to that purpose, the board resolution of the same date speaks in terms of deferred compensation. The Court feels comfortable at this time ruling for the Plaintiff that the payments were, in fact, deferred compensation. Such a basis for the agreement is completely consistent with the conservative business approach adopted by A.M. Yeomans over the years. He put all he had into the company and wanted it to go to the next generation to benefit his children and his grandchildren. Moreover, the expert testimony established that the amount in the agreement is completely in line with prevailing deferred compensation rates at the time the agreement was made. It must, in fairness, be noted that the Court's intuition suggests that the motivation for the $20,000 payments was not unmixed and that they may, in part, reflect remuneration for the transfer of stock. However, the Court finds no way to evaluate what portion of the motive was payment for the transferred stock and refuses to speculate.

The Court, therefore, finds that the facts as presented support Plaintiff's position that these payments were deferred compensation.

## FINDINGS OF LAW

The Internal Revenue Code, Chapter 26, U.S.C.A. § 404, makes payments of deferred compensation deductible for purposes of federal income taxes if that compensation would otherwise be deductible as an ordinary and necessary expense in carrying on of business under Code § 162. Section 404(a) of the Code provides that:

"If compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under § 162 (relating to trade or business expenses) or § 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year; ..."

The explanatory treasury regulation, § 1.404(a)–1(b) denies a deduction to a payment under a plan "which is primarily for the benefit of shareholders of the employer," finding that such payment may "constitute a dividend within the meaning of § 316."

Section 162(a)(1), sets out the relevant criteria for deductibility in this case. The requirements are two: the payment must be reasonable in amount and it must be compensatory in nature.

The determination of reasonableness is a factual one made by a consideration of the circumstances existing on the date that the agreement was entered into. The Court believes, after considering the testimony and documentation provided by both parties, that the $20,000 annual payment to Mr. Yeomans was reasonable. In making this determination, the Court accepts as correct the Government's contention that the agreement was entered into at a time when Mr. Yeomans still controlled the company and that it was prospective only, thus requiring the Court's close scrutiny. However, even viewed with the required skeptical eye, Mr. Yeomans' total dedication to the company and his consistent application of conservative business policies, the fact that he drew modest amounts of salary from the company over the years, the placing of his deferred compensation payment amount in the middle of the normal range at the time the agreement was made, and the fact that the company is in sound financial condition and is able to make such payments without financial detriment all combine to convince the Court that the amounts agreed upon are reasonable.

The determination that the payments are in the nature of compensation requires the

Court to consider the stock transfers that were made by Mr. Yeomans to his son, Murray, and assess the motivation and intent underlying the execution of the agreement. As indicated above, the Court finds that there may have been some element of payment for the transferred stock, but further finds that the overriding intent, the *dominant* motive, was actual remuneration for services rendered to the corporation but inadequately compensated at the time of their performance because of Mr. Yeomans' insistence on maintaining adequate capital.

Therefore, the Court finds that the dual criteria for deductibility under § 162 of the Internal Revenue Code have been met and that Mr. Yeomans' annual $20,000 payment is the type of deferred compensation which may be deducted under § 404(a) of the Code.

It is hereby ordered that the additional tax and penalty in the amount of $27,804.98 were improperly assessed and should be returned to the Plaintiff with the statutory interest.